Representatives of the Union tentatively agree to that, subject to a vote of the membership. Would folks like Mr. Sargent be able to vote on that? Not under – I guess there are a couple of answers. Under the Union rule, clearly not. Clearly the Union's rule is that casual employees do not get to vote on collective bargaining agreements. The remedy, if there were to be one, would, it seems to the Union, would clearly be a claim that the Union had breached its duty of fair representation. Clearly the Union has to represent fairly the interests of its casual members, as well as – This rule precluded members of the Union, which Mr. Sargent clearly is, from voting on matters that did not directly impact them. The language of the bylaw – and this does get us back to that first issue – the language of the bylaw uses this phrase, directly involved. But the Union has always interpreted and defined that as a term of art, directly involved. What the Union has said is, seniority employees, members who take on responsibilities to their employer, as well as just getting the benefits that a casual gets from the employer. So you're telling us that the phrase, directly involved, quote, unquote, in the Union's mind and in its interpretation, is that even a contract ratification which eliminated the jobs of non-seniority casuals, or all casuals, would not directly impact that class of folks. I think I would rephrase that, because the Union rule is not – If you rephrase, you get to answer my question. Well, and I promise I'll answer your question. The important thing is that the rule is not focused – the bylaw is not focused on the content of the collective bargaining agreement. The rule is completely – But how could it not be? Well, because it's – When it uses the language directly involved. Well, as I – It came to the Union and said, we don't like Sargent. He's a troublemaker. He's smart as hell. He's a gadfly. And we'll double the wages of your regular employees if you will get rid of this guy. And that would clearly – Or not contest his being fired. And that would clearly be a breach of the Union's duty of fair representation, which is a separate legal obligation to represent – But your interpretation is even that scenario would not be, quote, directly involved. That is correct, because directly involved is a term of art which is defined as being seniority employees. Directly involved relates to the right to vote on a contract. That's correct. It doesn't relate to the individual's right to go through the grievance procedure. That's correct. Or at least through the internal union grievance procedure. And under the contract as well. It's either with the international or with the court. Right. If you discriminate against him. That's correct. I just want to be clear about this, that even a contract ratification that called for the elimination of the jobs of half of your membership would not constitute, quote, directly involved. The question from the union, if you were to file an appeal within the union and said, I was directly involved, I was not allowed to vote, the test for whether you were directly involved is whether you are a seniority employee. It does not have anything to do with the actual effect on you of a contract. And let me just say a little bit about – Let me ask you this question. If you had a union membership of 1,000 people and an employer that hired nine regular employees and two casual employees, then every member of the union of those 1,000 had a right to be a casual employee. If you said that all casual employees could vote or all those who had an interest, would that mean all 1,000 could vote on the contract affecting the ten? Other – If I understand the question.  Not reasonable. I said if you interpreted the rule the other way, that you can't prohibit anyone who has an interest, is not an employee of the company, but just works there when he feels like it, and you had, let's say, 80 people who worked there full time, that was their livelihood, and you had 2,000 people who had a right when they needed people from time to time, every week they needed somebody, and they'd call any of the 2,000 members. If your rule directly involved could not limit it to the vote to the 80 who work there, whose jobs are there, would that mean you would have to allow the full 2,000 to vote? Absolutely. Under Mr. Sargent's interpretation, casuals who worked one day in three years have the right and cannot be excluded because, in fact, if you worked one day in three years, there was an impact, there would be an impact on you, for example, if the employer and the union were to agree to eliminate the casual job classification. I think we have – There are industries like that where people just get called in from the master list of everybody in the union. Right. Then you'd have to let everyone vote. And the bottom line is, and I think that all rules have to be looked at, we have to look at it in this context. There might be a scenario in which a given union rule would be unreasonable because the anti-democratic effect of that rule exceeded the justification to the union. In this scenario – How do you find an answer to that question, whether the – this is one of our wonderful balancing tests. Where would you look to see where – Well, I think where you have to start is the presumption that the federal bench was not intended to micromanage union decisions. And that's where I thought it was significant. And Judge Armstrong, I think, disagreed that this rule is not based on invidious characteristics. And I think what I attempted to emphasize in the brief, the fact that it's not even an immutable characteristic. It's not a rule that says you have to – This act wasn't passed to deal with that kind of problem. It was passed to deal with a perceived lack of democracy on the part of Senator Griffin and Representative Landrum, who were terribly concerned about workers' rights. But I think to answer your question about how you do that balancing act, it's worth noting and giving emphasis to that this rule – I mean, I think the significance of the admission that Mr. Sargent had an oral argument in the district court. I said, well, he actually had been offered twice the opportunity to work more, take more responsibilities to Golden Gate, and then he would be able to vote. He said that. He said he was not interested in a full-time job. That's right. He wanted to be a casual. I think that the democratic effect normally when we look at the anti-democratic effect of any rule, and including the LMRDA cases interpreting various different union rules, they say things like, well, any rule that says you have to have worked for six years before you can vote, that's really a burden because six years is a long-term rule that says you have to attend 95 percent of the union meetings before you can vote. So a rule that says you have to say yes when the employer calls you to give you work does not seem to have the same – it just does not impose the same burden. Any – the record indicates undisputed that any employee of Golden Gate and any member of the union who is interested in being able to vote has to simply step up to the bar and take some responsibility. And it's also not insignificant, I think, that Mr. Sargent and the other casuals can attempt to vote Ms. Cecitano out of office. They can run for office themselves. They can attempt to amend the bylaw that defines directly involved. So if you had a situation with 100 casuals and 10 regular employees, they presumably would have the votes within the union to change the bylaw and say, you know, we want the union to act more on our behalf. Finally, there is this issue that it is not as if the union then is unconstrained, and I do think Judge Hawkins' point needs to be addressed face on. The union is not unconstrained. It cannot simply throw its casual employees to the wolves. It certainly cannot throw Mr. Sargent to the wolves in the one example that Judge Hawkins gave. It can't throw the plaintiff to the wolves in the sense that it can discipline them for doing something because they don't like what he's doing. But they do have the right to favor one category of employee over another without being held to discriminate it. They don't have a remedy for unfair representation if you favor regular employees over casual employees. And I guess maybe, and we're in an interesting area of the law, but maybe we would need to borrow from those cases interpreting the duty of fair representation and say, well, if, in fact, the union could lawfully, without breaching its duty to a casual, sign a contract that eliminated all casual employment, then maybe that tells us something about the general standard of review of union decisions, and we could perhaps import that to some extent in this reasonableness distinction. Well, there are three places that there is a solution for casuals who are dissatisfied. One is the suit for the breach of the duty of fair representation. That's really not available if you're discriminating against one group of employees to benefit another. The second is, as you said, in the internal union mechanism where they have the right to adopt and participate in elections and try to have the union adopt any policy it wants. One is available. The other isn't, and we're talking about the third that sort of falls in the middle, which is do they have a right to vote on the contract. And there's actually a fourth that's worth noting because Mr. Sargent brought it below, which is he also sued the union claiming that it had violated its constitution by the way it interpreted directly involved, and he lost on that in the district court, and he did not appeal that to you. He brought Section 301 action saying the union breached its constitution. But I do think it's worth noting that under that duty of fair representation, the act which might otherwise seem shocking that the union could decide we want all full-time jobs, we're going to get rid of all the casual employees, is not actually shocking to the federal judiciary. It's clear. I believe that the DFR cases would say, well, that's a reasonable distinction. It's important to have regular part-time and full-time jobs, and that's a valid union interest. In this case, it was a very important employer interest as well. I do think that we need to respect the union's interpretation of directly involved as being a fine. You, like Mr. Sargent, are 50 percent over. If I could just, in closing, note that any rule is going to be potentially over-inclusive or under-inclusive, and so the test is not to find one scenario where a rule might seem unfair to a particular employee, but instead to try to say on balance does it seem a reasonable way for the union to accomplish its interest without imposing excessive hardship on any group of its members. Thank you very much. Mr. Sargent. Any other questions? Well, Judge Armstrong of the district court didn't really find the rule reasonable. She did the balancing act, and as a matter of fact, stated the rule was blatantly discriminatory and blatantly anti-democratic. I think politely suggest where she went wrong is with the mitigating factors, because I could vote in other union elections and had some other rights. I would submit to you that that is not in the balancing test. Well, I don't know whether she said it's blatantly undemocratic. I would say that's somewhat of an exaggeration. There are lots of other members of the union. If this were a rule that applied to more than the union represents more than this one employer, then there are lots of union members who are not allowed to vote on this contract, even though every contract they enter into has a substantial effect. In fact, in many union employer contracts, they say that any contract you enter into has a favored nations clause, and it will affect every other contract. But even if you don't have that, the wage scale you agree to with Employer A is going to affect the employees of Employer B. Yet you can have only the employees of Employer A vote on it. So it's undemocratic in the sense that not every union member is allowed to vote on the ratification of a particular contract, only those directly affected. And the question is, is it reasonable to say only those who are willing to take jobs here, as opposed to occasionally accepting an assignment if they feel like it? Well, Your Honor, I just suggest this, that the whole premise of how easy it is for us to get jobs, including attaining seniority, I don't believe to be true. Well, unfortunately, the record in the case is that it is easy. Well, I just... You had that opportunity twice in the last few months. Right. Well, yes, to turn down full and part-time jobs, and you're entirely correct that I choose to be a casual. But the union is implying that I could very easily get enough work to obtain seniority casual status and thereby vote. And that is absolutely not true. And I would suggest to the Court it's absolutely now not true because the union chose to eliminate five permanent casual shifts and create two full-time jobs, which, in effect, reduces our chances of ever getting seniority. I further suggest to the Court that the union declaration, they said that for 25 years they have interpreted that dreadfully evolved standard. And I think what the balancing test calls for in that situation is to look at the anti-democratic effects of the rule versus the union's right to protect itself as an institution. I would submit to this Court that the union hasn't shown they need any protection here. We're not the enemy. And in several other regions, of course, these casuals do vote without these horrible consequences. You mentioned the duty of fair representation, and that's an excellent question. To prove it in negotiations, as you said, is near impossible. If the union shows up at the bargaining table and talks a little bit, you'd play hell ever sustaining a DFR charge against them. However, in the scenario that you set out, eliminating all the casual jobs, it would still be very difficult for an employee to file a DFR charge. The union would have to have some sort of reason. I agree with you about that. I think you can favor one class of employees over another, and you're not going to be able to win an unfair representation case. Right. Because they leave those decisions. I'm sorry? They leave those decisions to the union. Absolutely do, and in many cases, properly so. They won't second-guess a union, in many cases, with a representational role. Unfortunately, what this really does to non-seniority casuals, if we have no protection, no way to protect ourselves, the only way we'd be able to protect ourselves is to be given the right to vote on these vital issues that concern our employment. You can't influence the policy of the union in union elections, internal union affairs. You have a full right to participate there. Well, I would suggest, John, I'm sorry. You disagree with the policy of the leaders of the union. You have a right to seek their recall, I assume. It's one of those wonderful reforms we have is the recall system. But you can. I mean, you can get up on the floor of the union meeting and say, these leaders are selling us out. Look what they're doing to the casuals. Let's get rid of them. Well, I've responded to that in the following way. Ms. Cecchietano, the regional director, was recently re-elected to her position for the term of three years. I believe the union mailed out over 300 ballots because they represent several employers and a lot of other bargains within Golden Gate Transit. I would suggest to you that two or ten non-seniority casuals will theoretically have the right to change things. The reality is we have hardly any right at all to make those changes. All right. If you have something important you want to say in rebuttal. I'm sorry. I said if you have something further that's important that you want to say during rebuttal, take the next minute. I certainly will. Thank you very much. I'd like to also suggest to this court that regarding electing union officers and other remedies in the future, that's of little good when the damage has already been done, and I think that's the principal reasoning behind the Zamora case, that the remedy really can't solve the problem that exists. I would also submit to this court that although I'm not a lawyer, I have thoroughly reviewed the cases before you. I can find no case where 50% of a bargaining unit was discriminated against and not allowed to vote, and that rule was upheld. And I'll leave it at that, Your Honor. Thank you, Mr. Sir. Thank you. Thank you for letting me present my case. You've done a remarkable job with that legal term. Thank you very much. I appreciate that. Case just argued will be submitted.
judges: Reinhardt, Siler, Hawkins